### MORTON & CANDA *vs.* OSTROM.

Where, upon the dissolution of a copartnership, the retiring partner claimed to have a right and interest in the lease and unexpired term for years of the premises occupied by the firm, which claim was disputed by the other partners, but finally the point was conceded to him and his right and interest in the lease and term became an element and one of the stipulations in the contract for the sale of his interest in the partnership to his copartners and for the dissolution of the firm, a specified sum being credited to him therefor; *Held* that the remaining partners were concluded by what they had done, on the ground of its being a compromise and settlement of a disputed claim; and that they could not recover back the sum thus paid by them.

The defendant, being engaged in business, upon certain premises occupied by him under a lease for a term of years, on the 1st of April, 1853, entered into a copartnership with the plaintiffs for continuing the business at the same place under the name and style of "M. & C.," the capital of the firm being $15,000, each partner contributing the one-third part thereof, and each being entitled to one-third of the profits. At the same time the defendant assigned to the firm of M. & C. the lease of the premises occupied by the firm. During the continuance of the copartnership, the lease and term for years were treated, by all the partners, as partnership property, in which they all had an equal interest. *Held,* that upon the dissolution of the copartnership the defendant was entitled to receive the one-third part of the estimated value of the lease and the unexpired term in the leasehold property.

THE parties plaintiffs and defendant were copartners in trade and business in the city of Brooklyn, in buying and selling building materials, under the name and style of Morton & Canda. The capital employed was $15,000, each partner contributing the one-third part thereof. The con-

Morton *v.* Ostrom.

tract of copartnership was in writing, dated April 1st, 1853, and the business was prosecuted under it until the 1st day of March, 1857, when it was terminated, the dissolution to take effect from the 1st day of January previous; the defendant Anthony P. Ostrom withdrawing from the concern, and the plaintiffs, John Morton and John M. Canda, remaining and carrying on the business for their own benefit, in the firm name. The business of the firm was carried on upon certain premises, being a pier with the land under water on Pacific street, in the 6th ward of the city of Brooklyn, held under a lease originally granted by the executrix and executor of Henry Patchin, deceased, to Anthony P. Ostrom for a term of years, reserving rent, &c., with the right of renewal. At the time the defendant retired from the business he sold out his interest therein to the plaintiffs, including such interest as he had in the lease above referred to, and the unexpired term of years therein granted. He was paid and allowed, in various ways, as a consideration for his interest in the property and effects of the firm, the sum of $16,900; and in making up this sum his interest in the lease and unexpired term for years was estimated to be worth the sum of $2004.42, for which sum he was credited in the statement upon the basis of which the sale was effected. He is therein debited with certain sums of money, which, deducted from the $16,900, the estimated value of his interest, left a balance due him of $6,928.92, for which the plaintiffs delivered him three promissory notes made by Morton and Canda: one at 45 days with the interest, for $2500; one at 4 months with interest, for $1428.92; and one at 5 months with the interest, for $3000. These notes were paid at maturity by the plaintiffs. The written statement upon which these facts appear is marked Exhibit C. and is a paper read upon the hearing, in evidence, by the plaintiffs. They now allege that the credit to the defendant, in the statement, of $2004.42 was an error. That the defendant was not the owner of one-third of the lease and of the unexpired term of years, and

had no manner of interest therein, and that the same was the exclusive property of the plaintiffs. This action was brought in the city court of Brooklyn, to recover back such sum of $2004.42, together with the further sum of $2219.91, being moneys which should have been charged to the defendant in the said estimate, for his proportion of the value of the use of the demised premises during the continuance of the copartnership. The action was referred to Jesse C. Smith, as sole referee, to hear and determine. After the plaintiffs had closed their evidence and rested, the referee dismissed the complaint, adjudging that the plaintiffs had no right of action. From the judgment entered upon the report, the plaintiffs appealed to this court.

*D. P. Barnard*, for the plaintiffs.

*J. M. Van Cott*, for the defendant.

*By the Court*, BROWN, J. This is not an action to open an account and correct a mistake. That is a simple proceeding, and one to which the courts will readily lend their aid, under proper circumstances. Had the transaction between the parties been limited to an examination and adjustment of their accounts as copartners, and a mistake had been made in favor of the defendant, by an error in the figures, or, through ignorance of some fact, he had been credited with an item to which he was not entitled, the error would have been open to correction. But the present case does not arise out of the settlement and adjustment of the copartnership accounts between the parties. The transaction was really and substantially a dissolution of the copartnership and a sale of the defendant's interest in the property and effects of the firm to the plaintiffs. In estimating its value, and the price to be paid for it, both parties considered the subjects in which the defendant had or was supposed to have an interest. In this way they arrived at what they esteemed the aggregate value, which was $16,900. And it was for this sum

Morton *v.* Ostrom.

the defendant sold his interest and retired from the concern. This is manifest from the language of Exhibit C., which is Ostrom's receipt for the consideration money, $16,900, and is declared to be in full for all claim and interest whatever in the business of the firm. It also appears from a memorandum furnished by Morton to his counsel, Richard Ingraham, to draw up the articles of dissolution, in which it is said, "John Morton and John M. Canda pay Anthony P. Ostrom in full for his share &c. $16,900. Ostrom retires from the firm, and partnership dissolved." This memorandum is marked Exhibit F. Under the contract the defendant took the consideration money, and the plaintiffs took to their own exclusive use the property and effects of the firm, the good will of the business, and all the future profits and advantages to be derived therefrom. The plaintiffs now ask, not to rescind the contract of sale and restore both sides to the condition they were in at the time it was made, and take back the defendant as a partner in the business with a right to the profits since that time, but they ask to recover $4224.33 in money from the defendant, upon the ground of a mistake in the defendant's rights and interests in the property, and consequently in the price they paid him therefor. It is obvious this cannot be done without manifest injustice, for it would be coercing the defendant into a contract for the sale of his property to which he never gave his assent.

The argument, thus far, proceeds upon the ground that the defendant had no interest whatever in the lease, and the unexpired term for years granted thereby, and the plaintiffs had no knowledge or information of such want of interest. I will now proceed to show that both these pretenses are disproved by the testimony.

The articles of copartnership are signed by all the parties, personally, in the presence of R. C. Underhill, who also signs it as the subscribing witness. The plaintiffs allege that they were ignorant, at the time of the contract of sale, that these articles contained a clause in the following words: "And

it is hereby declared that nothing herein above contained shall be deemed or taken to apply to a certain lease of the premises now occupied by said firm for carrying on of said business, and which was absolutely sold and assigned by the party of the second part (Anthony R. Ostrom) to the parties of the first part, (Morton & Canda,) nor to the demised premises therein described, the same being held by said parties of the first part free and clear of all interest and claim of the party of the second part, under or by virtue of these presents." This stipulation, to which both plaintiffs had set their names and seals, in the presence of a witness, they allege was unknown to them at the time of the contract of sale, and had before that time been removed from the office of the firm by Ostrom, and was then withheld by him from their inspection and observation. It appears, however, that for some time after it was executed it remained in the office, open to the observation and inspection of the plaintiffs. John Morton, in his testimony, says, "There was but one of the articles of copartnership, to my knowledge, executed of the date of April 1st, 1853, between plaintiffs and defendant ; it was brought to the office of Morton and Canda at the foot of Pacific street, Brooklyn. It remained in the office in the fall and winter of 1853-4. In July or August, 1854, we looked for it and it was gone. I cannot say when it was taken away. I don't recollect when I saw it before July or August, 1854. I saw it frequently in the safe." For the space of fifteen months, then, this paper was in the plaintiffs' possession and open to their observation. During this time, and indeed during the entire term of the copartnership, they treated the lease and the term for years precisely as they did at the time of the dissolution, as copartnership property, a thing in which the defendant had an equal interest with each of themselves. It is necessary to an intelligent apprehension of this subject to remember that Ostrom was the lessee, and carried on the same business on the demised premises at the time the copartnership was formed. He assigned the lease, not to John

Morton and John M. Canda in their individual names, but to the firm of Morton & Canda, of which firm Ostrom, the assignor, was a member. This deed of assignment was not produced by the plaintiffs at the hearing, Canda alleging he had looked for but could not find it. This is a misfortune, for there is reason to think that its production would have removed some of the doubt and obscurity in which this affair is involved. Be that as it may, the acts of the parties show in what light they regarded this lease, and to whom it belonged. The value of the lease, with the improvements and erections on the premises, was fixed at $1209.14. If it had been the intention that John Morton and John M. Canda were to become the owners of the lease and unexpired term individually, they would have paid for it with their own means, and not with the means and property of the firm. If it was designed the firm of Morton & Canda should become the owners, then the firm would have paid for it or be charged with the price of it. Accordingly, we find upon the day-book of the firm, under date of April 1st, 1853, an entry as follows: "Improvement account to A. P. Ostrom, Dr. Value of office, house, docks, fences, lease, $1209.14." That is, the improvement account of the firm owed the defendant this sum of money for the property assigned to the firm. But this is not all. The firm expended large sums of money upon the demised premises, in extending the pier and other improvements, which expenditures appear from year to year upon the books; and during the same time there were various receipts for wharfage and debts for taxes and ground rent paid, which also appear upon the books of the firm. John M. Canda in his evidence swears the premises, during this period of time, were worth $3000 yearly rent. Yet the copartnership is not charged upon the books with the annual value of the premises, nor are John Morton and John M. Canda credited with anything therefor. The accounts were made up annually, under the supervision of the plaintiffs, during the continuance of the copartnership. It had been

in existence near four years at the time of the dissolution and the contract of sale, and we there find an entry made by the plaintiffs, in exhibit C. which was made the basis of the contract, crediting the defendant with $2004.42, "agreed upon as consideration for all his present and future interest in lease of premises foot of Pacific street." Nor can it be safely said that this sum was allowed to the defendant by the plaintiffs in ignorance of the facts, or of their own rights, and without their attention being directed to it. It was the subject of discussion and negotiation at the time of the dissolution. Canda, in his testimony, in speaking of the negotiation, says: "The defendant found some fault with other entries in exhibit C., which he waived; and finally thought they were right ; but he said, "there is one thing which is worth three or four times what you value it at," and that was the lease, and he said, "we could not buy him out on any other terms than by allowing him $2000 more for his part of the lease than we put it down at in our balance. Mr. Morton made the remark, that he thought the defendant had no interest in the lease, and if he had in the old one, he had not in the new one, (the lease had been renewed under one of its stipulations.) The defendant replied, he had an interest, and that Morton was very much mistaken if he supposed he had not.". The point, as the result proves, was conceded to the defendant, and thus his right and interest in the lease and unexpired term for years became an element and one of the stipulations in the contract of sale, and for the dissolution of the firm. As the compromise and settlement of a disputed claim, the plaintiffs are concluded by what they have done, and cannot recover back the money paid. (*Mowatt* v. *Wright*, 1 *Wend.* 355. *Russell* v. *Cook*, 3 *Hill*, 504. *Mutual Ins. Co.* v. *Wager*, 27 *Barb.* 354.) The articles of copartnership to which I have already referred, throw some additional light upon this transaction, which I will shortly notice. I have said that Ostrom was in the business upon the demised premises, and the lessee

thereof, at the time the articles were executed. The deed is not a triparte instrument, made between Morton of the first part, Canda of the second and Ostrom of the third part, but expresses to be made "between John Morton and John M. Canda, both of Brooklyn, carrying on the business of buying and selling building materials at said city, under the style and firm name of Morton & Canda, parties of the first part, and Anthony P. Ostrom, of the same place, party of the second part," and recites that the party of the second part has paid in and contributed in materials and otherwise to the capital of the firm, to be used in the business, $5000, and that the capital now amounts to $15,000. Then follow the provisions that each should bear an equal portion of the losses, and the profits and increase to be divided, two thirds to the parties of the first part and one third to the party of the second part. The defendant was not required to bestow any time, labor or services to the business of the firm, and he should have the right to withdraw from the concern at his pleasure, when his proportion of the property, profits and effects of the firm were to be paid to him according to the terms specified in the instrument. The stipulation in regard to the lease of the premises upon which the business of the firm was to be carried on, and the term for years therein, which I have heretofore quoted, can receive an interpretation which will corroborate and support all that the parties have done in regard thereto, by holding that the parties of the first part, to whom the defendant had assigned the lease and term for years, were the firm or copartnership of Morton & Canda, and not John Morton and John M. Canda individually. And that they were to hold it for the uses of the firm and not for their own individual and personal uses. The defendant, being interested in the property and effects of the firm to the extent of the one third part thereof, was consequently entitled to receive at the dissolution the one third part of the estimated value of the lease and the unexpired term in the leasehold property. This is the construction which the par-

ties themselves have at all time put upon the contract of co-partnership, and I cannot doubt but it is the true one.

The plaintiff's claim has no foundation in law or equity, and the judgment should be affirmed.

[KINGS GENERAL TERM, December 10, 1860. *Lott, Emott* and *Brown,* Justices.]